16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marty Lew MORGAN, Defendant-Appellant.
 No. 92-6717.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1994.
 
 Before: MILBURN, RYAN and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 On October 13, 1992, appellant Marty Lew Morgan pled guilty to one count of possession of marijuana with intent to distribute, a violation of 21 U.S.C. Sec. 841(a)(1). The District Court sentenced him to 37 months, to be followed by five years supervised release. He now appeals this sentence, and we affirm.
 
 
 2
 Despite his having pled guilty, Morgan contests the Government's version of the facts, because of their impact on his sentence. According to the Government, the facts are as follows. In the wee hours of January 14, 1992, Irene Lakes called the Mt. Vernon, Kentucky, police to report that her daughter, Anita Smith, was being held at gunpoint inside defendant's house. The police dispatcher summoned the police while Mrs. Lakes contacted the County Sheriff.
 
 
 3
 When the Sheriff arrived at Morgan's residence, he used his car's loudspeaker to announce his presence. Getting no response from inside, the Sheriff radioed the police dispatcher who called Morgan's house. A man answered the phone and affirmed that the dispatcher had indeed reached Morgan's home but denied that Anita was there or had been there all night. The dispatcher told the man that the police were in his driveway and wanted to talk to him, but no one came out.
 
 
 4
 A short time later, the dispatcher called again. This time no one answered, but after awhile, a man came out of the house and began yelling threatening obscenities and shooting at the officers. Sheriff Smith recognized the voice as Morgan's. A few minutes later, after things had settled down, the dispatcher received a call from Anita Smith, who said she was being held at the house. A man, who identified himself as "Marty," snatched the phone away and told the dispatcher that the woman who had spoken was not Anita, but a woman named Sandy Stewart. Morgan then asked whether there were police in his driveway. The dispatcher again said there were, and told Morgan that the woman had called in distress and wanted to leave. Morgan responded that she was free to leave, but told the dispatcher to have the police "turn their g** d*** blue lights on or I will get my AK-47 and blow their f***ing cars in two!"
 
 
 5
 After a while longer, Anita emerged from the residence and told the police she had seen Morgan take a gun out of a safe and go outside shortly before the shooting began, and that he came back in soon thereafter. Morgan finally came out unarmed, and threatened the police once more before ultimately being subdued and arrested. Officers then searched the house and found the still partially loaded AK-47, several more guns, a triple-beam scale, and a sizeable quantity of marijuana in bags. Outside the house they found shell casings which the police laboratory determined were fired from the AK-47.
 
 
 6
 Morgan paints a different picture of that morning's events. He says that he had partied the prior evening, gotten drunk and passed out in the basement. While he admits that a "small portion, less than eight ounces" of the marijuana was his, he claims that one Marvin Morris was living in the basement at Morgan's request; Morgan had actually moved out of the house and into a trailer a few months before. Morris, says the appellant, brought most of the marijuana into the basement along with the scale and personal belongings.
 
 
 7
 Morgan maintains that while he was passed out, Morris and Anita Smith, who were also in the basement, had "some difficulty" which resulted in the initial call to police. The police on arrival "refused to identify themselves" and when Morgan woke up and perceived the place to be surrounded, he thought he was "under attack by the family or friends of Donnie Clemens," whom Morgan had "shot and killed in self defense" in 1990. For this reason, Morgan asserts, he talked to the dispatcher and asked the police to turn on their blue lights. Once he saw blue lights, Morgan claims that he and Anita "surrendered" to the police. Morgan claims that Morris, not he, came out of the house earlier and threatened the police, "fired several shots and escaped."
 
 
 8
 The police looked into this explanation, but found no evidence suggesting that anyone other than Morgan and Anita were at the house that night. While Morgan points out that the police admitted they did not have the house completely surrounded, Sheriff Smith testified that the backyard of the residence had recently been graded, was muddy from snow and rain which had fallen that night, and police found no fresh footprints in the yard which Marvin Morris might have made in getting away. Further, Anita told the police that it was Morgan who had held her captive, and Morgan who had gone outside with the AK-47 and returned with it.
 
 
 9
 1. Obstruction of justice enhancement.
 
 
 10
 Morgan first objects to the District Court's enhancing his base offense level under Sec. 3C1.1 of the Federal Sentencing Guidelines for obstruction of justice[1] by providing materially false information to the probation officer in regard to the offense. He notes that the Presentence Report (PSR) prepared by the Probation Office did not recommend such an enhancement.[2] Morgan claims the District Court erred in imposing this enhancement where "the alleged falsehoods" were unrelated to the criminal charges, and in considering as obstruction of justice statements which Morgan made simply to defend himself.
 
 
 11
 The cases defendant cites to support this claim of error are distinguishable. United States v. Thompson, 944 F.2d 1331 (7th Cir.1991), cert. denied, 112 S.Ct. 1177 (1992) held that a convicted defendant's sentence could not properly be enhanced for obstruction of justice simply because the defendant had exercised his Fifth Amendment right to deny his guilt. 944 F.2d at 1348. Where the defendant did not commit perjury or otherwise actively attempt "to mislead or deceive authorities," he has not obstructed justice for the purposes of the Guidelines. Id. at 1347-48. In the Sixth Circuit case Morgan cites, United States v. Burnette, 981 F.2d 874 (1992), we held that the trial court may not impose this enhancement without having made a specific finding that the defendant lied, or engaged in the proscribed misleading or deceptive activities. 981 F.2d at 878. In this case, after briefly summarizing Morgan's story and the testimonial and other evidence against it, the District Court found that the defendant's "statements given to the Probation Officer ... just don't ring true...." The court thus made "an independent finding that [defendant] was untruthful in statements made ... 'for the purpose of impeding the administration of justice.' " United States v. Clark, 982 F.2d 965, 969 (6th Cir.1993). Since the record supports this finding, the District Court did not clearly err in concluding that Morgan lied, and did not err in imposing the enhancement. Id.
 
 
 12
 2. Victim-related enhancement.
 
 
 13
 Morgan next objects to the District Court's enhancing his sentence under U.S.S.G. Sec. 3A1.3, which provides for a two-level base offense level increase "[i]f a victim was physically restrained in the course of the offense[.]" The PSR recommended that no enhancement for physical restraint be added, and the Government objected. Morgan claims that Anita Smith "denied ever saying she was held by Appellant," that she "sought and obtained a dismissal of the charges against Appellant," and that "[s]he has consistently maintained that Marvin Morris was the individual who held her against her will," and provided an affidavit to that effect from Smith.
 
 
 14
 The case Morgan cites, United States v. Curran, 926 F.2d 59 (1st Cir.1991), does not help him. In the face of Anita's purported insistence of his innocence, appellant suggests that the District Court erred in considering testimony such as that of the dispatcher who took Anita's call for help, in finding that Anita had been "physically restrained" that night. However, the court remanded in Curran because the sentencing court had provided to the probation officer but not to the defendant certain letters containing factual assertions and allegations upon which the court relied in part in sentencing defendant to which defendant had no opportunity to respond. 926 F.2d at 60, 63. Because of the "appearance of impropriety" which resulted from this situation, the appeals court remanded the case for resentencing, invoking its general "supervisory powers" (under 28 U.S.C. Sec. 2106) over the propriety of trial proceedings. Id. at 62, 64.
 
 
 15
 The Curran opinion does note that "a defendant has the due process right to be sentenced upon information which is not false or materially incorrect," id. at 61, but the information the court relied on here, while evidently disputed, is not "false or materially incorrect." Although Anita Smith did sign an affidavit that accompanied defendant's objections to the PSR, to the effect that Marvin Morris, not Morgan, had held her at gunpoint against her will at the Morgan residence, defendant did not call her to testify on his behalf at the sentencing hearing or otherwise provide evidence to back up his version of the events.
 
 
 16
 The sentencing court exercises "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits of law." Williams v. New York, 337 U.S. 241, 246 (1949) ( quoted in United States v. Silverman, 976 F.2d 1502, 1508 (6th Cir.1992) (en banc). The District Court here held an extensive sentencing hearing to elicit additional evidence prior to deciding to enhance defendant's base offense level. Since considerable evidence showed that Morgan had held Anita Smith against her will at gunpoint on the morning in question, the court did not clearly err in so finding. Courts have determined "physical restraint" to include holding victims at gunpoint, United States v. Doubet, 969 F.2d 341, 345-46 (7th Cir.1992) or even at knifepoint, United States v. Roberts, 898 F.2d 1465, 1470 (10th Cir.1990); thus the District Court did not err in making the enhancement.
 
 
 17
 3. Possession of firearms.
 
 
 18
 While conceding that the District Court properly enhanced his base offense level by two levels for possession of a firearm in the context of his drug offense, Morgan argues that the court erred in imposing an additional three level increase for assaulting a law enforcement officer "in a manner creating a substantial risk of serious bodily injury" under U.S.S.G. Sec. 3A1.2. Boosting the base offense level for possession of firearms and then boosting it again for using those guns constitutes an impermissible "double counting" that punishes him twice for the same offense, Morgan contends.
 
 
 19
 As this Circuit has viewed the double-counting issue, the Guidelines do not permit "the same conduct to be punished cumulatively under separate Guidelines provisions." United States v. Romano, 970 F.2d 164, 167 (6th Cir.1992). In this case, Morgan's possession of the guns and his use of the AK-47 to shoot at the police were not the same conduct. The District Court made this distinction, finding specifically that the enhancement for possession was warranted because the guns discovered in the house were possessed in order "to protect defendant's drug trafficking business ... [and to] protect the stash," and making a discrete finding that the enhancement for assaulting officials was warranted because Morgan endangered the police by firing the AK-47. The District Court did not err in imposing these enhancements.
 
 
 20
 4. Sufficiency of evidence that Morgan fired the AK-47.
 
 
 21
 Morgan argues that since the police did not make any effort to dust the AK-47 for fingerprints, and since there was some testimony at the sentencing hearing that a police officer heard two "bursts" of gunfire,[3] the Government did not adequately prove that Morgan was the one who fired at the officers. Morgan asserts that since the officers did not surround the house, "[i]t is not surprising that the machine gun was not found", and suggests that Marvin Morris made off with "the" machine gun after shooting it at the police.
 
 
 22
 In the context of sentencing, the Government need prove the underlying facts only by a preponderance of the evidence. McMillan v. Pennsylvania, 477 U.S. 79 (1986). The existence of possible alternatives does not preclude proof by a preponderance of the evidence; we note that Morgan's explanation of that morning's events, in light of the entire record, does not even seem possible. Anita Smith said she saw Morgan take the rifle and walk out of the house; after hearing gunfire, she saw him return, gun still in hand. The Sheriff said he recognized Morgan's voice screaming obscenities as the shots were fired. More importantly, perhaps, the police found spent cartridges at the spot the "machine gunner" stood; the State Police Laboratory determined that these shells came from Morgan's AK-47. This is more than enough evidence to support the District Court's finding that Morgan himself discharged the weapon.
 
 
 23
 5. Acceptance of responsibility.
 
 
 24
 The appellant asserts that he was entitled to a reduction in his calculated base offense level for accepting responsibility under U.S.S.G. Sec. 3E1.1. We review the District Court's denial of such a reduction only for clear error; since this is a factual matter hinging largely on the sentencing judge's assessment of the defendant's credibility, we afford the District Court great deference in making this decision. United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989). We do not recognize entering a guilty plea, without more, as accepting responsibility. United States v. Cristoph, 904 F.2d 1036 (6th Cir.1990), cert. denied, 498 U.S. 1041 (1991). While not ruling it out in "extraordinary cases," the Application Notes to Sec. 3E1.1 state that the court's imposition of an enhancement for obstruction of justice, "ordinarily indicates that the defendant has not accepted responsibility." The District Court correctly declined to grant a reduction for acceptance of responsibility here.
 
 
 25
 6. Calculation of the quantity of marijuana.
 
 
 26
 Morgan objects to the District Court's determination that he had constructive possession of all the marijuana in the house, and that the total stash consisted of more than one kilo. Because the PSR calculation was based on "approximations[,] and included other substances than marijuana" in the total weight, appellant says the District Court ended up with a higher weight than is accurate.[4]
 
 
 27
 The District Court correctly held Morgan responsible for the entire quantity of marijuana found on the premises. Morgan's protestations that Marvin Morris, not he, was responsible for most of the contraband, as well as the scales, necessarily fail. We have, as did the District Court, only Morgan's word that Morris was the real dope dealer; Morgan's having moved to a trailer does not preclude his having used the basement of a vacant house to conduct his drug business. In any event, where the circumstances indicate that defendant has "ownership, dominion, or control over the contraband itself or the premises ... in which the contraband is concealed," defendant is deemed to be in constructive possession of the drugs, and the sentence may reflect his responsibility for the entire amount. United States v. White, 932 F.2d 588 (6th Cir.1991). The District Court found, and the record reflects, that the marijuana was stored "in a common facility" at Morgan's house. Since Morgan certainly had "ownership, dominion [and] control" over the premises and had reasonable access to the marijuana, the District Court did not err in attributing the entire amount to him.
 
 
 28
 In the context of sentencing, the weight of contraband is a question of fact, established by a preponderance of evidence, and reviewed only for clear error. United States v. Pirre, 927 F.2d 694, 696 (2d Cir.1991). While accurate weighing of the entire amount of contraband is to be preferred to estimation, extrapolation, and the like, approximations are acceptable methods of determining weight. Id. at 697; see also United States v. Cox, 934 F.2d 1114, 1121 (10th Cir.1991) ("Although the exact weight of the marijuana was never established and the approximate weight was very close to 100 kilograms, the evidence is sufficient to support the court's finding that it weighed in excess of 100 kilograms.") Even "an experienced narcotics officer's estimate" may suffice. United States v. Buggs, 904 F.2d 1070, 1080 (7th Cir.1990). It is incumbent upon the objecting defendant to provide some evidence to dispute the Government's methods or its representations as to weight; while a defendant does not have the right to weigh contraband independently, defense counsel may cross-examine the agents and/or chemists who weighed the contraband, demand production of the scales used, or the like. United States v. Webster, 750 F.2d 307, 334 (5th Cir.), cert. denied, 471 U.S. 1106 (1985) (in context of defense objection that marijuana weight included "extraneous material").
 
 
 29
 Where the defense, as here, has produced no evidence that the contraband weighed less than what the Government represented, the preponderance of evidence proves the weight as put forth by the Government. Pirre, 927 F.2d at 696. The PSR indicated that the marijuana, as tested by the laboratory, weighed 1,062.45 grams, or about 2.3 pounds. Presumably, Morgan objects to the Government's including the entire weight of rolled marijuana cigarettes in the total, which would include the rolling paper. The rest of the marijuana was in bags or other containers, and was evidently weighed separately, to "approximate" weights precise to a tenth of a gram. However, the entire weight of the cigarettes--paper, pot and all--amounted to only 3.15 grams. The calculated amount, even excluding the cigarettes completely and allowing for the tenths-of-grams "approximations," still weighed well over one kilogram, certainly enough to support the District Court's finding by a preponderance of the evidence.
 
 
 30
 6. Imposition of sentence at maximum end of applicable range.
 
 
 31
 Morgan lastly complains that the District Court erred in imposing a sentence of 37 months, the maximum sentence within the applicable guideline range.
 
 
 32
 This objection is completely without merit and frivolous. It is well established by Federal statute, and recognized in this Circuit, that a defendant may not appeal a sentence which falls within the applicable guideline range. 18 U.S.C. Sec. 3742(a); United States v. Sawyers, 902 F.2d 1217, 1221 n. 5 (6th Cir.1990), cert. denied, 111 S.Ct. 2895 (1991).
 
 
 33
 For the reasons discussed, we AFFIRM the sentence of Marty Lew Morgan.
 
 
 
 [1]
 The Guidelines provide a two level increase
 [i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense[.]
 U.S.S.G. Sec. 3C1.1.
 
 
 [2]
 The Government objected to this, arguing that the enhancement was "not only warranted, but required."
 
 
 [3]
 Defense counsel dwelt on the officer's characterization of the gunshots as "bursts," his admission that the term "bursts" generally refers to machine gun fire, and his statement that Morgan's AK-47 was not capable of automatic fire. Morgan argues that since the officer was a veteran of the Gulf War, his "expert" testimony somehow proves that the shots did not come from Morgan's AK-47
 
 
 [4]
 The Government contends that Morgan did not "challenge[ ] the methodology employed to weigh the marijuana" prior to this appeal, and has therefore waived this objection absent a showing of "plain error." However, defendant raised essentially the same questions in objecting to the PSR; therefore, we do not consider this objection waived