62 F.3d 1417
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tony HILL, Petitioner-Appellant,
v.
Richard JOHNSON, Respondent-Appellee.
 No. 94-2191.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1995.
 
 Before: MILBURN and NORRIS, Circuit Judges; and GRAHAM,* District Judge.
 PER CURIAM.
 
 
 1
 Petitioner appeals the dismissal of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254, in which he challenged the validity of his Michigan state court convictions for first degree murder, in violation of Mich.Comp.Laws Sec. 750.316, and conspiracy to commit murder, in violation of Mich.Comp.Laws Sec. 750.157a. On appeal, the issues are (1) whether the district court erred in finding that petitioner knowingly waived his right to be present and confront two witnesses, (2) whether the district court erred in concluding that a de facto severance did not occur so that petitioner's due process rights were not violated, and (3) whether the district court erred in finding that there was no prosecutorial misconduct. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Petitioner Tony Hill was charged with first degree murder, in violation of Mich.Comp.Laws Sec. 750.316, and conspiracy to commit murder, in violation of Mich.Comp.Laws Sec. 750.157a, in connection with the October 3, 1985 shooting death of Rodney Fancher. Petitioner was represented by an attorney at his joint trial with codefendant Anna Bushard, which began on May 5, 1986. On May 9, 1986, petitioner was convicted by an Eaton County, Michigan jury on both counts. Codefendant Bushard was also found guilty at that time. On June 12, 1986, petitioner was sentenced to a mandatory nonparolable life sentence on the murder charge and a 40 to 60 year sentence on the conspiracy charge. Petitioner appealed as of right to the Michigan Court of Appeals, and his convictions were affirmed on May 3, 1988. Discretionary review was subsequently denied by the Michigan Supreme Court on November 30, 1988.
 
 
 3
 On April 13, 1990, petitioner filed a pro se petition for writ of habeas corpus with the district court. Petitioner made three arguments: (1) the testimony of two non-endorsed witnesses violated petitioner's right to confront the witnesses against him, (2) the trial court erred in denying petitioner's pretrial motion for severance, and (3) the prosecutor engaged in egregious misconduct by calling two witnesses who testified against petitioner after the prosecutor had rested his case against petitioner and after petitioner had left the courtroom. Subsequent to the petition being filed in the district court, counsel was appointed for petitioner. Petitioner's case was stayed until his state court remedies were exhausted on a fourth issue; namely, whether his right to a fair trial was violated when the trial court denied the jury's request to read back testimony of Peggy Stevens. In an opinion and order dated August 30, 1994, the district court dismissed the petition on the merits and on petitioner's procedural default. This timely appeal followed.
 
 B.
 
 4
 At petitioner's joint trial in 1986, the prosecutor rested his case against petitioner before resting its case against codefendant Bushard because two additional witnesses were to testify against her. The two additional witnesses were Kathryn Wright and Rhonda Howlett, jailmates of codefendant Bushard during her incarceration in the Eaton County Jail while she was awaiting trial. Wright and Howlett were not listed as witnesses against petitioner, but petitioner was notified of the content of their proposed testimony prior to trial. In particular, petitioner's defense counsel was given a copy of a supplemental police report detailing what the expected testimony would be. At an in chambers conference, which was off the record, petitioner's defense counsel insisted that petitioner not remain in the courtroom while the two witnesses testified because of a perceived prejudice to him.
 
 
 5
 The prosecutor presented the testimony of Wright and Howlett, and petitioner's defense counsel remained in the courtroom throughout their entire testimony. The two witnesses testified concerning statements allegedly made by codefendant Bushard while she and the witnesses were jailmates. The statements allegedly made by codefendant Bushard also implicated petitioner, even though they were not admissible in the case against him.
 
 
 6
 Wright testified that following the preliminary examination, codefendant Bushard told her that she had seen Hill in the visitor's room and that Hill told her not to worry and that things looked good for her based on Peggy Stevens' testimony at the preliminary examination. Wright also testified about statements codefendant Bushard made concerning payment of a motorcycle and $100 to petitioner in return for killing Fancher. Howlett testified that codefendant Bushard told her she had given some money to Peggy Stevens who in turn gave it to petitioner and that petitioner was not to come into contact with Bushard.
 
 
 7
 Following the testimony of the two witnesses, the joint trial resumed and the prosecutor rested his case against codefendant Bushard. In presenting her defense, codefendant Bushard testified on her own behalf and denied making the statements to which Wright and Howlett testified. She also denied any involvement in the killing. Codefendant Bushard was cross-examined by petitioner's defense counsel. This sequence of events forms the basis for petitioner's claim for habeas corpus relief.
 
 II.
 A.
 
 8
 A claim for federal habeas corpus relief under 28 U.S.C. Sec. 2254 is only cognizable if it involves a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. Davis v. United States, 417 U.S. 333, 346 (1974); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir.) (per curiam), cert. denied, 113 S.Ct. 2424 (1993). Petitioner argues that the district court erred in finding that petitioner knowingly waived his right, as protected by the Confrontation Clause of the Sixth Amendment, to be present and confront witnesses Wright and Howlett. Although "a defendant charged with a felony has a constitutional right to be present at every stage of his trial," Finney v. Rothgerber, 751 F.2d 858, 861 (6th Cir.) (citing Diaz v. United States, 223 U.S. 442 (1912)), cert. denied, 471 U.S. 1020 (1985), that right may be waived if the waiver is knowing and voluntary, id. at 862. If a defendant voluntarily absents himself from the trial, this "operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." Id. at 862. The facts recited by the state courts in determining that a waiver occurred are entitled to a presumption of correctness. Id. Whether a defendant's absence constitutes a voluntary and knowing waiver is a mixed question of law and fact, and it must be clearly established that the defendant's absence was voluntary. Finney, 751 F.2d at 862. In Taylor v. United States, 414 U.S. 17, 19-20 n. 3 (1973) (per curiam), the trial court allowed the case against the defendant to proceed despite the fact that he absented himself from the trial following the opening proceedings. In affirming the conviction, the Supreme Court stated:
 
 
 9
 '[I]f a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. He must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away.'
 
 
 10
 Taylor, 414 U.S. at 19-20 n. 3 (quoting Cureton v. United States, 396 F.2d 671, 676 (D.C.Cir.1968) (Lamar, J., dissenting)).
 
 
 11
 The district court found that petitioner waived his rights to be present and confront witnesses Wright and Howlett because his absence from the trial during their testimony was by choice. Petitioner challenges the district court's conclusion, arguing that the record is devoid of any evidence indicating that he or his attorney knew that Wright or Howlett were going to give testimony directly implicating him by name. Petitioner claims that the witness list, the prosecutor's pretrial comments, and the prosecutor's decision to rest the case against petitioner gave the implication that the state would present no more direct evidence against petitioner. Petitioner states that it was based on that understanding that he and his defense counsel agreed to have him absent from the courtroom.
 
 
 12
 Based upon our review of the record, we disagree with petitioner's assertion that he and his attorney had no indication that Wright or Howlett would give testimony implicating him by name. Prior to trial, petitioner's defense counsel was provided a copy of the supplemental police report that detailed what the expected testimony of Wright and Howlett would be. The police report included references to the statements allegedly made by codefendant Bushard relating to the payments that were made to petitioner for killing Fancher. Thus, we cannot accept petitioner's argument that he was not aware that Wright and Howlett might give testimony that would incriminate him.
 
 
 13
 Moreover, we believe that petitioner's absence from the trial during Wright's and Howlett's testimony was by choice. Immediately before the prosecutor rested his case against petitioner, the prosecutor requested a side bar conference. The prosecutor had presented all of his evidence against petitioner and was debating whether to call Wright and Howlett as witnesses against Bushard. It was at this time that petitioner's defense counsel stated that petitioner would not remain in the courtroom while Wright and Howlett testified. Defense counsel, however, remained in the courtroom during the testimony of Wright and Howlett. Therefore, we conclude, as the district court found, that petitioner left the courtroom of his own volition and that his decision to be absent from the courtroom was his trial strategy. Consequently, we agree that petitioner knowingly waived his right to be present and confront witnesses Wright and Howlett.
 
 
 14
 Even assuming arguendo that the district court erred in concluding that petitioner knowingly waived his right to be present and confront witnesses, nothing that was testified to by Wright and Howlett had not already been testified to by numerous other witnesses. Thus, because the other evidence properly admitted against petitioner was sufficient to convict him, we agree that any violation of his rights to be present and confront Wright and Howlett was harmless error.
 
 B.
 
 15
 Petitioner argues that the district court erred in concluding that petitioner's due process rights were not violated because his trial was not de facto severed and that if any such violation occurred, it constituted harmless error. Specifically, petitioner claims that a de facto severance occurred when the prosecutor rested his case against petitioner and then called two additional witnesses who testified against codefendant Bushard after he had left the courtroom and that the de facto severance denied him due process because he was unable to cross examine those two witnesses.
 
 
 16
 Whether a trial was improperly severed is a mixed question of law and fact which we review de novo. See Corbett v. Bordenkircher, 615 F.2d 722, 725-26 (6th Cir.), cert. denied, 449 U.S. 853 (1980). However, the district court's factual findings are reviewed only for clear error. Amadeo v. Zant, 486 U.S. 214, 223 (1988); Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, 495 U.S. 950 (1990). In order for a trial court's decision concerning severance to rise to a constitutional violation, the petitioner must demonstrate that the prejudice that resulted was so egregious that it constituted a denial of due process. Corbett, 615 F.2d at 724, 726; see Herring v. Meachum, 11 F.3d 374, 379 (2d Cir.1993), cert. denied, 114 S.Ct. 1629 (1994).
 
 
 17
 In rejecting petitioner's claim, the district court determined that neither the trial court nor the prosecutor caused a de facto severance because petitioner's absence from the courtroom during the testimony of Wright and Howlett was by choice not mandatory. In petitioner's appeal of right to the Michigan Court of Appeals, the court held:
 
 
 18
 Co-defendant Hill's voluntary decision to absent himself from this part of the proceeding did not produce a de facto severance of trials. His counsel was present during the entire time that the challenged testimony was given. Since co-defendant Hill was still a party to the proceeding and had the right to present his defense, call witnesses, and argue his case to the jury, his counsel could have objected, recalled the witnesses for cross-examination on a proper motion, or requested a proper and timely instruction to cure any alleged error. Because counsel did none of these things, we believe that the decision to remain silent was part of counsel's trial strategy.
 
 
 19
 Opinion dated May 3, 1988, Michigan Court of Appeals (quoted in Appellee's Brief at 28-29). These findings, which are consistent with our reading of the record, support the district court's conclusion that a de facto severance did not occur because it was petitioner's strategic decision not to remain in the courtroom during the testimony of Wright and Howlett.
 
 
 20
 Moreover, the district court concluded that petitioner could not demonstrate substantial prejudice to his defense because the evidence against him was more than sufficient to convict him without the testimony of Wright and Howlett. Petitioner does not directly challenge the district court's conclusion that the other evidence would have been sufficient to convict. Instead, he merely alleges that the testimony of Wright and Howlett was crucial evidence because it directly corroborated a critical witness, Peggy Stevens. After reviewing the evidence in this case, we do not agree with petitioner's characterization of the additional testimony but agree that other evidence properly admitted against petitioner was sufficient to convict him. Therefore, petitioner's severance argument does not provide a sufficient basis for habeas corpus relief.
 
 C.
 
 21
 Petitioner argues that the district court erred in finding both that there was no prosecutorial misconduct and that any such misconduct was harmless error. Petitioner claims that the prosecutor committed misconduct by resting his case against petitioner, thereby tricking him into leaving the courtroom, and then calling two additional witnesses who directly implicated him in the Fancher murder.
 
 
 22
 Whether the prosecutor engaged in misconduct is a mixed question of law and fact which we review de novo. United States v. Clark, 982 F.2d 965, 968 (6th Cir.1993). However, as earlier stated, the district court's factual findings are reviewed only for clear error. Amadeo, 486 U.S. at 223; Lundy, 888 F.2d at 469.
 
 
 23
 Misconduct by a prosecutor can rise to the level of a due process violation. Lundy, 888 F.2d at 474. However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1355 (6th Cir.1993), cert. denied, 114 S.Ct. 1317 (1994). " '[T]he touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.' " Serra, 4 F.3d at 1355 (quoting Smith v. Phillips, 455 U.S. 209, 219 (1982)). In this regard, the "misconduct must be so ' "pronounced and so persistent that it permeate[d] the entire atmosphere of the trial." ' " United States v. Payne, 2 F.3d 706, 712 (6th Cir.1993) (quoting United States v. Vance, 871 F.2d 572, 577 (6th Cir.) (quoting United States v. Manar, 801 F.2d 1477, 1503 (6th Cir.1986)), cert. denied, 493 U.S. 933 (1989)). Once the court determines that the prosecutor's actions were misconduct, it must ascertain whether the misconduct was harmless. Id. In a collateral attack on a state court conviction, the error is deemed harmless unless it " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The petitioner has the burden of demonstrating that any alleged error resulted in actual prejudice to his defense, id., and a conviction should not be overturned on the basis of misconduct unless it resulted it actual prejudice, Sizemore v. Fletcher, 921 F.2d 667, 670 (6th Cir.1990).
 
 
 24
 In its opinion dated August 31, 1994, the district court rejected petitioner's argument regarding prosecutorial misconduct based upon its conclusion that the facts showed that the prosecutor did not engage in misconduct. The district court found:
 
 
 25
 Petitioner and his counsel were aware of the potential witnesses that were called, as well of the context of their expected testimony. Also, the prosecutor recognized that the testimony of the two witnesses was not admissible in the case against petitioner and so appropriately rested its case against petitioner before calling them to the stand.... Finally, the prosecutor did not force petitioner to leave the courtroom during the testimony of the two witnesses. He left on his own, knowing that the two witnesses were going to testify.
 
 
 26
 J.A. 153. We do not believe that the district court committed clear error in making these factual findings. See Amadeo, 486 U.S. at 223. Accordingly, after de novo review, see Clark, 982 F.2d at 968, we agree that the prosecutor did not engage in misconduct by resting his case against petitioner and then calling two additional witnesses who implicated petitioner. Therefore, habeas corpus relief is not available to petitioner based on the alleged prosecutorial misconduct.
 
 III.
 
 27
 For the reasons stated, the district court's dismissal of petitioner's petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation