RICE, District Judge,
concurring.
I concur fully with the conclusions reached by the majority. I write separately only to discuss the comments made by the prosecutor. Like the majority, I ultimately conclude that his comments did not violate either defendant’s right to a fair trial. I do, however, believe that several of them were improper, even if they were not flagrant enough to constitute prosecu-torial misconduct. My discussion is confined to the following four categories of comments: 1) the prosecutor’s comments regarding the absence of testimony from Amanda Evans and his invocation of the invited reply doctrine; 2) the prosecutor’s comments about the tactics of defense counsel; 3) the prosecutor’s reference to unemployment insurance as “a sacred trust”; and 4) the prosecutor’s insinuation that Sara had evaded paying her taxes.
The Sixth Circuit applies a two-step test to claims of prosecutorial misconduct. United States v. Carson, 560 F.3d 566, 574 (6th Cir.2009) (citing United States v. Gardiner, 463 F.3d 445, 459 (6th Cir.2006)). First, the court determines if the prosecutor’s statements were “improper.” Id. Second, if the statements were improper, a determination must be made as to “whether the remarks were flagrant and thus warrant reversal.” Id.
1. Comments regarding Amanda Evans and the invocation of the “invited response” doctrine. “Under the ‘invited response’ rule, a ‘reviewing court must not only weigh the impact of the prosecutor’s remarks, but must also take into account defense counsel’s opening salvo.’” United States v. Henry, 545 F.3d 367 (6th Cir.2008) (quoting United States v. Young, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). If the defendant “invites” the prosecutor’s remarks, which only “respond substantially in order to ‘right the scale,’ such comments would not warrant reversing a conviction.” Id. Thus, a prosecutor’s “legitimate reply to defense assertions that the government hid evidence from the jury” would not constitute improper burden shifting. United States v. Newton, 389 F.3d 631, 638 (6th Cir.2004), rev’d on other grounds by Newton v. United States, 546 U.S. 803, 126 S.Ct. 280, 163 L.Ed.2d 35 (2005) (rejecting defendant’s argument that the “prosecutor improperly shifted the burden during closing argument by arguing to the jury that [defendant] could have played an audiotape that the government chose not to play for the jury” where the prosecutor’s argument “was made to rebut defense insinuations that the government intentionally kept evidence away from the jury”); see also United States v. Clark, 982 F.2d 965 (6th Cir.1993) (holding that no improper burden shifting occurred when prosecutor remarked upon defendant’s failure to call a witness in response to defense counsel’s assertion that the wit *512 ness would not have corroborated testimony of another government witness).
J. Nicholas Bostic, Kevin’s attorney, made repeated references to Amanda Evans during his closing arguments. The first thing that Bostic said after greeting the jury was “reasonable doubt in this case has a name and that name is Amanda Evans.” On several occasions, Bostic asked “Why did we not hear from Amanda?” Bostic also stated:
The reasonable doubt in this case is Amanda Evans. They want you to do the heavy lifting for them. They want you to make logical leaps that are unsupported by the evidence or any inferences from it. They have simply failed to prove their case. They have left open the entire question of who is Amanda Evans, what did she do, where is she and why is she not here, (emphasis added)
“In every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence and the lack of evidence on material matters. Indeed, it is the absence of evidence upon such matters that may provide the reasonable doubt that moves a jury to acquit.” United States v. Poindexter, 942 F.2d 354, 360 (6th Cir.1991) (reversing trial court’s decision to prevent defense counsel from commenting on prosecution’s failure to introduce fingerprint test results that did not reveal defendant’s prints on contraband). In this instance, Kevin’s counsel cannot be faulted for attempting to leverage the absence of testimony from a person that was repeatedly referred to by Defendants’ testifying employees into a jury finding of reasonable doubt. However, his remarks also invited the jury to speculate on the Government’s motive for not calling Amanda Evans as a witness, and to infer that her testimony would have been unfavorable to the Government. This “opening salvo” justified some response by the Government. United States v. Young, 470 U.S. 1, 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).
Sara’s counsel, Richard Stroba, also mentioned Amanda Evans, but he did not launch a comparable “opening salvo.” Rather, his comments were only directed towards testimony that the jury had heard or evidence in the record:
... the only evidence in this record is that [exhibits] H and I weren’t signed by Sara Johnson; they were signed by somebody else. We don’t know who. I would suggest the reasonable inference, based upon the testimony you heard, is Amanda Evans or perhaps Kevin Johnson, but not Sara.
Ms. Heddens testified that from time to time she would put things in these binders. I suspect, too, that Amanda Evans put things in the binders.
Every other employee who testified essentially similarly, and I think that you can find this to be true, that Amanda Evans was the one who filled out the UI forms and filed them, took their information, inputted it into the computer, sent it off and brought them back their PIN number and told them what to do, not Sara Johnson.
In contrast to Bostic’s remarks, Stroba’s remarks did not invite a comparable response from the Government. Rather, his references to Evans all attempted to cast reasonable doubt on his client’s participation in the scheme. Stroba never mentioned Evan’s absence as a witness, much less associated it with the prosecution’s strategy. Thus, although the Government may hsive been warranted in responding to Bostic’s statements, it was not proper for the prosecutor to state that he was responding to what both Defendants’ attorneys had said when he stated the following in his rebuttal:
*513 First and foremost, you heard both defense counsel repeatedly say, “Where is Amanda Evans? Why haven’t you heard from her?” And this is what we call the Invited Reply Doctrine. This is where I get to tell you she was right out there under defense subpoena and they didn’t call her. So ask yourselves why they didn’t call Amanda Evans. Maybe the same reason Kevin and Sara didn’t fire Amanda Evans even two years after she supposedly did everything and got them in all this trouble, because Amanda Evans knew where all the bodies were buried and they wouldn’t have liked the answers she was going to give you.
It was improper for the prosecutor to invoke the invited response doctrine with regards to comments made by Sara’s counsel. It was only Bostic, Kevin’s attorney, who made comments suggesting that the Government made a strategic decision to not call Amanda Evans as a witness. Thus, it was also improper for the prosecutor to assert that the “defense” had subpoenaed Evans, when only Sara had done so.

2. Comments regarding the conduct of Defendants’ attorneys.

On rebuttal, the prosecutor also stated: Now, both defense attorneys have been telling you that you shouldn’t believe any of these workers, that they’re all suspect. You know what? You’re hearing the same thing in the courtroom that was happening to these workers the whole time they were there: You don’t play along, you get cut off, you get no paycheck, you get no job. And what did you hear these people say? “Nobody will believe you because we have good lawyers.” And you saw that threat playing out right in front of you. Mr. Bostic, you saw him cross-examining Angela Heddens who got up here and seemed pretty upset tb basically be called stupid. Mr. Bostic stood up here and said, “Can you read the English language?” That’s the kind of treatment she could expect and why she probably kept her mouth shut.
You heard Mr. Stroba saying to Mike Husband, who admitted to you that he used to use drugs, that he had a criminal history, that’s why he couldn’t find another job, and Mr. Stroba called him a crack-head over and over again. “Were you using crack that day, the day before? Are you a crack-head now?” That’s the treatment he could expect.
It is true that “[t]he prosecution necessarily has “wide latitude’ during closing argument to respond to the defense’s strategies, evidence and arguments.” Bedford v. Collins, 567 F.3d 225, 234 (6th Cir.2009) (citing United States v. Henry, 545 F.3d 367, 377 (6th Cir.2008)). But such latitude does not allow the prosecutor to equate the criminal conduct of the Defendants with their attorneys’ cross-examination of the witnesses. In this instance, the association carried particular force because part of the Government’s theory of the case was that the witness-employees were vulnerable people that Kevin and Sara had preyed upon in order to carry out their fraud scheme. The prosecutor even referred to the former testifying employees as “victims” of Defendants’ fraud (“You’ve heard from all those people and the ways in which they were victimized”). It was improper for the prosecutor to suggest that the witnesses’ treatment by defense counsel during cross-examination fulfilled a threat that Sara made to them during the execution of the fraud. The prosecutor’s rhetoric risked undermining the jurors’ perception of the integrity of the cross-examination process by blurring the distinction between the conduct that Kevin and Sara were accused of with the defense tactics of their attorneys.
8. The Government’s appeal to civic duty. Defendants argue that the following *514 comments of the prosecutor amount to an improper appeal to civic duty:
You’ve heard from all those people and the ways in which they' were victimized, but let me suggest to you there’s another victim, too. The Unemployment Insurance Agency. All that money is the people’s money, it’s the taxpayers’ money, and I’m not suggesting to you that you should feel bad for the Unemployment Insurance Agency because it’s some big government program. Unemployment is more than that. Unemployment is all of us caring for each other, reaching a hand out to a neighbor who’s down on their luck and helping them up, helping out a worker who needs to get back up on their feet. Some of us in this room have been there before. Many of us will be there again or people we love will be there again. Unemployment is a sacred trust.
“Nothing prevents the government from appealing to the jurors’ sense of justice” during closing arguments. Bedford, 567 F.3d at 234 (citing Coe v. Bell, 161 F.3d 320, 351 (6th Cir.1998)). Certain appeals are patently improper, however, such as encouraging jurors to identify with crime victims. Johnson v. Bell, 525 F.3d 466 (6th Cir.2008). “The prosecutor must avoid ‘undignified and intemperate’ arguments and arguments that may contain ‘improper insinuations and assertions calculated to mislead the jury’ by inciting passion and prejudice.” United States v. Laurrence, 735 F.3d 385, 432 (6th Cir.2013) (quoting United States v. Solivan, 937 F.2d 1146, 1150 (6th Cir.1991)).
Here, the prosecutor’s remarks walk a fine line between appealing to the jurors’ sense of justice and identifying with the victim. By describing the Unemployment Insurance Agency, the victim of the Johnson’s fraud, as a “sacred trust” comprised of “all of us caring for each other,” and that has helped “[s]ome of us in this room,” the prosecutor’s remarks appear designed to align the jury, as members of society, with the victim. Nevertheless, the remarks were not calculated to mislead, nor do they seem likely to have resulted in juror passion that might have overcome the ability to make a reasoned determination of Kevin and Sara’s guilt. While the prosecutor’s remarks certainly gave the jury reason to connect the effects of their crimes to society at large, the remarks were not an improper appeal to civic duty.
A Comment about Sara not paying taxes. Sara argues that the following statement of the prosecutor was improper:
You know why she was getting paid under the table and not on the official payroll. When you’re on the official payroll, the IRS gets a W-2. So the fact she seems to have been trying to evade paying her taxes doesn’t make her innocent, does it?
These remarks were improper. . Sara was on trial for mail fraud, not the unrelated offense of tax evasion. Furthermore, the prosecutor’s statement suggested that her alleged failure to pay taxes was somehow probative of her guilt for the offense of mail fraud, and its strength relied upon a suggestion of Sara’s bad character. “A fundamental rule of evidence is that a defendant’s ‘bad character’ cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime.” Washington v. Hofbauer, 228 F.3d 689, 699 (6th Cir.2000) (citing Fed.R.Evid. 404(a)); see also Hodge v. Hurley, 426 F.3d 368 (6th Cir.2005) (finding prosecutor’s suggestion improper that child rape defendant “regularly drank alcohol illegally by passing himself off as being over twenty-one years of age — a claim that in no way relates to the crime charged” because it emphasized the defendant’s “bad character”). The prosecutor’s remarks suggested that Sara was a tax evader and was therefore *515 not “innocent.” The suggestion was wholly improper.
5. No comment was sufficiently flagrant to warrant a new trial. Even if several of the prosecutor’s remarks were improper, however, they were not sufficiently flagrant to grant either defendant a new trial when considered within the context of the trial as a whole.
The following four factors are used to evaluate flagraney: “(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.” United States v. Carson, 560 F.3d 566 (6th Cir.2009) (quoting United States v. Carter, 236 F.3d 777, 783 (6th Cir.2001)). Considering the first factor, the prosecutor’s remarks may have misled the jury as to which of the defense attorneys’ statements warranted the invited reply. As discussed, only Kevin’s attorney made comments that invited a reply. However, none of the other improper comments could have misled the jury in their consideration of the actual evidence the jurors considered.
The comments were “isolated,” which weighs against a finding of flagraney under the second factor, because the prosecutor made them only in the rebuttal to Bostic’s closing argument. The remarks were clearly “deliberate,” and not “accidentally made,” as the prosecutor was directly addressing Bostic’s remarks. This weighs in favor of flagraney under the third factor.
The fourth factor, which asks “whether the evidence against the defendant was strong,” decidedly does not weigh in the Defendants’ favor. Id. The former employees testified that Sara had given them instructions on how to fill out unemployment insurance paperwork and operate its phone system, threatened the employees that they would go to jail if they reported the scheme, and even demanded kickbacks from the checks. The evidence also showed that Sara contacted the unemployment agency and the payroll companies and kept two sets of binders in her office that evidenced the fraud. Kevin went to the unemployment office in person to pose as an employee and applied for benefits himself, in addition to taking an unemployment check from an incarcerated employee’s mailbox. The Government had strong, compelling evidence of Sara and Kevin’s guilt. In short, although the prosecutor made several improper comments during the trial, they were not flagrant enough to warrant a new trial.
As the foregoing discussion indicates, my only difference with the majority concerns the propriety of several of the prosecutor’s comments. None of them amounted to prosecutorial misconduct, however. In that conclusion and in all others reached in the majority’s opinion, I wholly concur.