**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tyrez CLARK, Defendant–Appellant.**

**No. 91–2345.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 1, 1992.

Decided Jan. 6, 1993.

Lawrence J. Phelan (argued and briefed), Grand Rapids, MI, for defendant-appellant.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and HIGGINBOTHAM, Senior Circuit Judge.*

RYAN, Circuit Judge.

Tyrez Clark appeals his conviction and sentence for conspiring to distribute and possessing with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a) and 846; maintaining a drug house, in violation of 21 U.S.C. § 856; and using or carrying a firearm in the commission of a felony, in violation of 18 U.S.C. § 924(c)(1). Clark's appeal raises three issues. The first is whether the district court properly denied Clark's motion to suppress incriminating statements made by Clark in response to a federal agent's "booking questions." The second is whether Clark's trial was rendered fundamentally unfair when the government, during closing arguments, referred to Clark's failure to call a certain witness to his defense. And the third is whether the district court erred when it raised Clark's offense level for obstruction of justice.

Because we find no error in the district court's rulings or judgment, we shall affirm Clark's conviction and sentence.

I.

Clark and a juvenile friend were arrested by state police and federal agents during the execution of a search warrant at an apartment in Benton Harbor, Michigan. The police obtained the search warrant because they had probable cause to believe the apartment was operating as a "crack house." During the search, police discovered Clark and the juvenile sleeping in the apartment. The officers arrested Clark and seized a quantity of crack cocaine and a gun. Clark provided the arresting officers with a false name, false date of birth, and false address.

Clark was taken to the Berrien County jail where he provided booking officers with another false name and address. He revealed his true identity several hours later after police confronted him with the inconsistencies. During the booking process, police discovered $100 in Clark's shoe and a small amount of crack cocaine in his underwear.

State charges against Clark for narcotics and firearm violations were dismissed

---

* The Honorable A. Leon Higginbotham, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

when the United States Attorney for the Western District of Michigan filed federal charges against him. As a result of the federal charges, two agents from the Bureau of Alcohol Tobacco and Firearms took custody of Clark and transported him to federal court in Grand Rapids, Michigan, for arraignment.

One of the agents, David Milhills, testified that the ATF agents did not immediately warn Clark of his *Miranda* rights because they did not intend to interrogate him during the drive to Grand Rapids. However, within a few minutes after leaving the county jail, Agent Milhills asked Clark about five minutes worth of personal history information in order to complete a standard booking form. Approximately 15 minutes after the personal history questioning ceased, Clark stated: "It was our gun"; "It was our dope"; "Where is my partner?"; and "You ain't got nothing on me. It wasn't my personal gun. It was just a house gun."

Prior to trial, Clark moved to suppress the statements, but the district court denied the motion on the basis that the statements were made spontaneously and not as a result of police interrogation. At the suppression hearing and at trial, Clark denied making the incriminating statements, and denied all of the criminal conduct charged in the indictment.

During closing arguments at trial, Clark's counsel told the jury that the government did not call the other ATF agent, who was in the car and who should have been able to support Milhills's testimony. Clark's counsel suggested that the reason the government did not call the other agent was because he would not corroborate Milhills's testimony that Clark had made incriminating statements. In rebuttal argument, the Assistant United States Attorney stated:

> We're left with the case the government presented. You can't speculate on things. But you can consider this: Remember the defendant had the opportunity to call witnesses if he chose to. If there is proof that he lied, he had the opportunity. Not the responsibility.

Clark's counsel objected, and the district court neither sustained nor overruled the objection and, instead, instructed the jury that the defendant had no obligation and was not expected to call the ATF agent to testify. Clark's counsel made no further objections to the government's closing arguments.

Clark was convicted on all three counts of the indictment. At the sentencing hearing, the district court found, over Clark's objection, that he gave false information to the police regarding his identity and that his trial testimony was "less than truthful." Finding that Clark attempted to obstruct the investigation and the prosecution, the district court applied § 3C1.1 of the Sentencing Guidelines and enhanced the sentencing offense level by two points for obstruction of justice.

## II.

### A.

■ Clark first argues that the ATF agents violated his Fifth Amendment right against self-incrimination. He claims that the personal history questioning by Agent Milhills was actually "interrogation," in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was a "mere pretext to get [Clark] to open up and incriminate himself." The government acknowledges that Clark was in custody and that Milhills did not give Clark *Miranda* warnings prior to or during the trip to Grand Rapids. However, the government argues that the questioning did not amount to interrogation because it was limited to "routine booking questions"; thus, any statements made by Clark other than in response to the routine booking questions were voluntary.

As a general rule, when a defendant is in custody, law officials must give him appropriate *Miranda* warnings before interrogation begins; otherwise, any statements resulting from the police interrogation will be inadmissible unless the defendant clearly and intelligently waived his rights. *Miranda*, 384 U.S. 436, 86 S.Ct. 1602. Interrogation is defined as "questioning initi-

ated by law enforcement officials." *Id.* at 444, 86 S.Ct. at 1612. This definition has been extended to the "functional equivalent" of express questioning and includes, "any words or actions on the part of police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Custodial interrogation includes "words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to 'have ... the force of a question on the accused' ... and therefore be reasonably likely to elicit an incriminating response." *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990) (citation omitted).

"Routine booking questions," or questions posed to secure the personal history data necessary to complete the booking process, are exempt from *Miranda*'s coverage. *Id.* This court has adopted the view that: "Ordinarily, ... the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda*." *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984). Thus, absent evidence that a defendant has particular susceptibility to the questioning or that the police used the booking questions to elicit incriminating statements from the defendant, routine biographical questions are not ordinarily considered interrogation. *Id.* at 1024.

Whether the agents "interrogated" Clark is an issue of fact we review for clear error. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir.1988). Clark agrees that the questions posed by Agent Milhills sought only routine information for the booking form. He offers no evidence to support his conclusion that Agent Milhills used the questions as "mere pretext" to elicit incriminating information, nor does Clark offer any evidence to establish that he was particularly susceptible to that line of questioning. Moreover, some 15 minutes elapsed between the end of the booking questions and answers, and the

incriminating statements Clark claims were inadmissible. Thus, we do not find that the district court clearly erred when it concluded that there was no interrogation. Because Clark was not interrogated, within the meaning of *Miranda*, during the ride to Grand Rapids, the statements he made that went beyond the scope of Milhills's "booking questions" were voluntary utterances. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible into evidence." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1629.

## B.

■ Clark also asserts that the government's rebuttal argument improperly referred to Clark's failure to call the special agent who accompanied Clark and Agent Milhills to Grand Rapids. He claims that it constituted prosecutorial misconduct and denied him a fair trial because it suggested to the jury that Clark had the burden of proving his innocence. The government counters that the argument made in response to Clark's closing was not improper, and even if it was, it did not render Clark's trial fundamentally unfair.

■ Whether the government's closing argument amounted to prosecutorial misconduct and whether the argument rendered the trial "fundamentally unfair" are mixed questions of law and fact. We review mixed questions *de novo. Pullman Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991). Although a prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the government's case, the prosecutor must avoid commenting in such a way that he treads on the defendant's constitutional rights and privileges. *United States v. Parker*, 903 F.2d 91, 98 (2d Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). For example, it would be improper for the prosecutor to suggest that the defendant had the burden

of proof or any obligation to produce evidence to prove his innocence. *Id.*

We think the prosecutor's argument did not amount to misconduct. The rebuttal statements were made in response to defense counsel's argument that implied that the government had not called the other agent to testify because Milhills lied on the stand, and the fellow agent would therefore not corroborate Milhills's "perjury." The government's rebuttal argument did not imply in any way that the burden of proof was on the defendant to prove his innocence. It was, instead, fair comment designed to meet the defense counsel's argument that the government omitted to call the second agent because he would have testified in favor of Clark. There was nothing unfair about the argument. Moreover, in an abundance of caution, lest a juror misapprehend the relevance of the government's response, the court immediately instructed the jury that normally the defendant would not call a government witness and had no duty to do so. The court also instructed the jury that the government had the burden of proof as to all the elements of its case against the defendant. We conclude that the challenged rebuttal argument was not unfair. In all events, the record does not support a finding that, absent the prosecutor's comments, Clark's conviction would not have occurred. *See Parker,* 903 F.2d at 98.

### C.

Clark's final argument is that the district court erred when it increased Clark's sentencing guidelines offense level by two points for obstruction of justice for making false statements before and during the trial. Clark claims that the court failed to identify specifically which of his statements were false and that the record does not support a finding of obstruction of justice. He further contends that applying the two-point increase punishes him for testifying in his defense.

The guidelines provide, in pertinent part: If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The commentary further provides:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision.

U.S.S.G. § 3C1.1, comment. (n. 1). We have held that committing perjury is the type of conduct to which the enhancement applies and that there is "no constitutional right to commit perjury." *United States v. Acosta–Cazares,* 878 F.2d 945, 953 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); U.S.S.G. § 3C1.1, comment. (n. 3(b)). "A false statement justifying an application of the two-level enhancement must be such that, if believed, it would tend to influence the issue under determination." *Id.*

In assessing the two point enhancement, the district court stated:

Well, the court believes that the totality of all of these factors convince the Court that the defendant either obstructed justice or attempted to obstruct justice.

The particular provision says this:

"If the defendant willfully obstructed or impeded or attempted to impede the administration of justice during the investigation, prosecution or sentencing of the instant offense, increase the offense level by two levels."

And so the Court based on the totality of all of these circumstances, including statements made prior to the trial and during the trial, adding all of those factors together indicates ... to the Court that the defendant did not tell the truth on one or more occasions for the purpose of impeding the administration of justice and the investigation and prosecution of this matter. So the Court is going to increase the sentencing offense level by two levels as a result of that.

The district court did not apply the obstruction of justice provision simply on the basis that Clark claimed he was innocent but the jury found him guilty. Rather, the

court made an independent finding that Clark was untruthful in statements made "prior to the trial and during the trial ... for the purpose of impeding the administration of justice...." Once the court made this finding, it was justified in applying the enhancement for obstruction of justice. *See United States v. Alvarez*, 927 F.2d 300, 303 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991).

But Clark insists that the enhancement for obstruction of justice was not warranted because the court did not articulate the specific statements made prior to trial and the specific testimony it found to be untruthful. While it is true that the court did not identify the specific statements by Clark that were untruthful, an examination of the colloquy between court and counsel at sentencing reveals that the district court accepted the government's argument, which did identify, with specificity, the statements by Clark the government claimed were untruthful. The government argued that Clark obstructed justice by giving false information to the arresting and booking officers; testifying under oath that he was not involved in the illegal conduct; and testifying under oath that he did not make the incriminating statements to Agent Milhills, which he earlier moved to suppress on the ground that they had been made in violation of *Miranda*, following interrogation. Although the court did not itself repeat the statements it found to be untruthful, the record reveals that the court had in mind the statements by Clark that had just been referenced by government counsel.

■ Nevertheless, the better practice, and the requirement that should be followed hereafter, is that, when assigning points for obstruction of justice, the district court should identify specifically which statements or actions by a defendant constitute an obstruction of justice. Ordinarily, only with that kind of record can the appellate court properly perform its responsibility to review whether an enhancement for obstruction of justice is proper.

Because we are able to determine from the context of the district court's otherwise generalized findings, which statements the court found warranted the enhancement for obstruction of justice, and because we find no clear error with respect thereto, we affirm the sentence.

### III.

For the above-stated reasons, we AFFIRM the judgment and sentence of the district court.