NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0828n.06

No. 11-3275

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 01, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellee, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| v. | ) | |
| | ) | |
| SHUCEEB GEEDI, | ) | OPINION |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |

Before:  **BOGGS, GILMAN, and DONALD**, **Circuit Judges.**

BERNICE B. DONALD, Circuit Judge.  Defendant Shuceeb Geedi was convicted of eight counts of food-stamp fraud, WIC[1] Program fraud, theft of public funds, and conspiracy to commit money laundering.  He now appeals his convictions on food-stamp fraud (Count 2), theft of public funds (Counts 6 and 7), and conspiracy to commit money laundering (Count 8).  Geedi also appeals the loss calculation and restitution amount of his sentence and raises an ineffective-assistance-of-counsel claim.  For the following reasons, we **AFFIRM** Geedi's conviction and sentence, **DENY** his ineffective-assistance-of-counsel claim, but **REMAND** with instructions to issue a schedule of payments for restitution.

---

[1]Women, Infants, and Children Program.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From 2003 until August 2006, Shuceeb Geedi managed Marwaas Market and City Dollar Store, two stores specializing in goods from Somalia. During the time that Geedi managed the stores, he, along with his co-defendants, converted food-stamp benefits and WIC coupons into cash and allowed customers to purchase ineligible items using their benefits.

The Internal Revenue Service and the United States Department of Agriculture conducted a joint investigation into the business practices of both stores. On December 13, 2005, a confidential informant entered the Marwaas Market, successfully exchanged food-stamp benefits for cash, and purchased ineligible items. On that same day, another confidential informant used WIC benefits to purchase ineligible items from City Dollar Store, even though City Dollar Store was not authorized to accept WIC benefits. The coupon in this transaction was later illegally redeemed through Marwaas Market. On two other occasions, for which Geedi handled the transactions, a confidential informant used food-stamp benefits and WIC coupons to get cash back and purchase ineligible items.

On August 8, 2006, after a search warrant was executed at both the Marwaas Market and the City Dollar stores, law enforcement agents found incomplete WIC coupons and Ohio Direction Cards[2] with associated PIN numbers that belonged to the recipients. The agents also found ledgers showing that Marwaas Market extended credit and cash to customers in exchange for WIC and food-

---

[2] The Franklin County, Ohio food-stamp program distributes benefits through the Ohio Direction Card. Each card contains a unique account number and a personal identification number.

stamp benefits. Agents also confiscated $19,024.66 from the Huntington National Bank business account of Marwaas Market and $10,000 in cash from Geedi's residence.

From 2003 through August of 2006, the Marwaas Market redeemed $597,814 in food-stamp benefits and $496,337 in WIC benefits for a total of $1,094,153. In this same period, City Dollar redeemed $2,487,011 in food-stamp benefits and $515,627 in WIC benefits for a total of $3,002,638. These funds were put into the accounts of Marwaas Market and City Dollar and were used to purchase inventory and pay business expenses.

On January 10, 2008, Geedi and his co-defendants were indicted on nine counts of food-stamp fraud, WIC fraud, and conspiracy to commit money laundering. During the course of the jury trial, Geedi made a motion challenging the sufficiency of the evidence, under Federal Rule of Civil Procedure 29. He failed to renew this motion at the close of all the evidence. Geedi was convicted of conspiracy to defraud the United States (count 1), food-stamp fraud (count 2), unlawful food-stamp redemption (count 3), WIC program fraud (counts 4 and 5), theft of public funds (counts 6 and 7), and conspiracy to commit money laundering (count 8). Geedi was sentenced to twelve months in a halfway house, six months of home confinement, probation, and restitution in the amount of $200,000. Geedi timely appealed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

As he did in his Rule 29 motion at trial, Geedi argues that there was insufficient evidence to convict him on felony food-stamp fraud, theft of public funds, and conspiracy to commit money laundering. When a defendant challenges the sufficiency of the evidence on appeal, we must view the evidence in the light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime. *United States v. Kuehne,* 547 F.3d. 667, 696 (6th Cir. 2008). However, when, as in the present case, a defendant has failed to preserve a Rule 29 motion by making a motion for acquittal at the end of the prosecution's case-in-chief and also at the close of evidence, the sufficiency-of-the-evidence challenge is reviewed for a "manifest miscarriage of justice." *United States v. Carnes,* 309 F.3d 950, 956 (6th Cir. 2002). Under this standard, we will reverse a conviction only if the record is devoid of evidence pointing to guilt. *Id.*

Geedi argues that there was not enough evidence presented during trial to convict him of felony food-stamp fraud, felony theft of public funds, and felony conspiracy to commit money laundering. Specifically, he submits that the government did not present any evidence showing that his involvement in each of these crimes met the threshold dollar amount for a felony charge. The applicable monetary threshold amount for felony food-stamp fraud is $100, 7 U.S.C. § 2024(b)(1),

for felony money laundering is $100, 18 U.S.C. § 1956(h)[3], and for theft of public funds is $1,000. 18 U.S.C. § 641.

The government presented evidence showing that Geedi was the manager of both City Dollar and Marwaas Market. He was responsible for the store's day-to-day financial operations. Under his management, City Dollar and Marwaas Market received over $3 million in food-stamp and WIC redemptions. A witness testified that on a few occasions he saw Geedi exchange food-stamp and WIC benefits for money. Witnesses also testified that Geedi would allow individuals to purchase ineligible items with their benefits and that this kind of activity was a regular practice at the store. Furthermore, City Dollar and Marwaas Market continually reported tax-exempt sales for amounts that were lower than the amount they received for food stamp and WIC redemptions. Food-stamp and WIC benefits are tax exempt. Therefore, the amount of money reported as tax exempt should be equal to or greater than the amount received in redemptions. During the time that Geedi managed the stores, the difference between the reported tax exempt sales and the total redemptions amounted to $2,269,189.27.

A reasonable trier of fact could conclude that the difference between the two amounts reflects the purchase of ineligible, taxable items with food-stamp and WIC benefits. Moreover, these amounts are well in excess of the statutory thresholds for the offenses with which Geedi was

---

[3] Under 18 U.S.C. § 1956(h), the defendant is subject to the same penalties as those prescribed for the offense that was the subject of the conspiracy.

charged. Because there was evidence pointing to Geedi's guilt, he has not shown that his convictions constituted a miscarriage of justice.

**B. Loss Calculation and Restitution**

Next, Geedi challenges the district court's loss calculation and order of restitution. Geedi did not object to the loss calculation or the restitution order during sentencing and challenges these portions of his sentence for the first time on appeal.

Ordinarily, when the district court, during sentencing, has offered a defendant a meaningful opportunity to raise objections that have not previously been raised and the defendant does not object, a plain-error standard of review applies. *United States v. Vonner,* 516 F.3d 382, 385. (6th Cir. 2008) (en banc). However, according to *United States v. Bostic,* the rule "requir[es] district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not been previously raised." 371 F.3d 865, 872 (6th Cir. 2004). If the court fails to invite objection in this way, a challenge to the sentencing should be reviewed under an abuse-of-discretion standard. *United States v. Freeman,* 640 F.3d 180, 186 (6th Cir. 2011). Under this standard, a district court's legal interpretations are reviewed de novo, but its factual findings will not be set aside unless they are clearly erroneous. *Id.*

In the present case, after pronouncing the sentence, the judge asked "[a]re there any other sentencing issues that I have not addressed?" This is insufficient to satisfy *Bostic*. *See United States*

*v. Batti,* 631 F.3d 371, 379 n. 2 (6th Cir. 2011); *United States v. Wettstain*, 618 F.3d 577, 592-93 (6th Cir. 2010). Therefore, we review Geedi's factual challenges to his sentence for clear error.

    1. *Loss Calculation*

The Sentencing Guidelines require that the district court make only a reasonable estimate of monetary loss. U.S.S.G. § 2B1.1, cmt. n. 3(C); *United States v. Triana,* 468 F.3d 308, 320 (6th Cir. 2006) (stating that "[i]n situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of loss given the available information"). "The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1, cmt. n.3(C). Precision is not required of the district court. *Triana,* 468 F.3d at 320.

Geedi argues that the district court erred when it calculated his offense level based on an amount of loss that was not supported by the record. The district court was presented with two estimations of loss. The court took into account the presentence report, which attributed to Geedi $200,000 in misappropriated funds, and the testimony of an expert witness, who determined the amount of loss to be much greater. The district court adopted the amount of loss as determined by the presentence report. In doing so, it looked at the nature of the crime, finding that Geedi engaged in a spectrum of violations–some minor and some more significant. The district court heard all the information presented at trial and had already sentenced other individuals involved in the case.

Thus, it was fully aware of all the evidence against Geedi. Geedi was the manager of both stores and was also the one who signed the applications for the stores to be able to negotiate WIC vouchers and food-stamp debit cards. The expert determined that, from approximately 2002 to 2006, the stores illegally redeemed food-stamp and WIC benefits in excess of $2 million. Based upon this information, the district court did not abuse its discretion by finding that Defendant's amount of loss was $200,000 for purposes of calculating his offense level.

2. *Restitution*

Geedi next argues that the district court failed to perform the proper analysis when it made a determination about the amount of restitution he owed. The district court ordered that Geedi pay restitution to the United States Department of Agriculture in the amount of $200,000.

Under the Mandatory Victim Restitution Act (MVRA),

Upon determination of the amount of restitution owed . . . the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C)     any financial obligations of the defendant; including obligations to

dependents.

18 U.S.C. § 3664(f)(2)(A)-(C).  The district court is not required to make findings on the record

regarding a defendant's ability to pay.  *United States v. Blanchard,* 9 F.3d 22, 24-25 (6th Cir. 1993)

(in affirming a restitution order, noting that the sentencing court had acknowledged that it reviewed

the presentence report and without further explanation imposed an order of restitution).  In the case

before us, the district court relied on the presentence report for the purpose of determining

restitution.  Geedi never objected to this portion of the report.  Because the presentence report

supported a restitution order of $200,000, the district court did not abuse its discretion in ordering

restitution in that amount.

Geedi further argues that the district court never specified how much his payments should

be or when they should be made.  In *United States v. Davis,* we adopted the reasoning of the Third

Circuit in *United States v. Coates*, 178 F.3d 681 (3d Cir. 1999), which held that the district court

must satisfy the MVRA's mandatory requirements under § 3664 by setting a payment schedule.  306

F.3d 398, 426 (6th Cir. 2002).  Here, the district court stated that "[the Defendant] shall make

restitution to the United States Department of Agriculture in the amount of $200,000 a portion of

which will be severally and jointly due with other co-defendants in this case."  Because the district

court determined the amount of restitution owed, but has not specified the manner or schedule of

payment, we will remand to the district court with instructions to issue a schedule of payments.

## C. Ineffective Assistance of Counsel

Finally, Geedi presents the court with a claim for ineffective assistance of counsel based on his attorney's failure to object to the order of restitution and to the advisory Guidelines ranges associated with the loss attributed to him. "Ordinarily, we will not review a claim of ineffective assistance of counsel on direct appeal because the record is usually insufficient to permit such review." *United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011). An exception exists, however, when the record is adequately developed to allow the court to properly assess the merits of the issue. *Id.* (citation and internal quotation marks omitted). The record in this case has been fully developed and additional fact-finding is unnecessary because Geedi is currently appealing the claim for which he believed he had ineffective assistance of counsel; thus we will address Geedi's ineffective-assistance-of-counsel claim.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court set forth the test for determining whether a defendant's counsel provided ineffective assistance. Under *Strickland,* Geedi must prove (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that this performance prejudiced the defendant's case. *Id.* at 694. It is unnecessary to address both components of the test if the defendant makes an insufficient showing on one. *Id.* at 697. To show prejudice, a petitioner must show that there is a reasonable probability that, but for the errors of counsel, his sentence would have been different. *Id.* at 694.

Geedi has not proven that he was prejudiced by his attorney's performance. Geedi's sentence would not have been any different because, as we have addressed, his restitution and loss claims are without merit. Geedi has not succeeded on his appeal and likewise would not have succeeded had his attorney raised those claims during trial. Geedi's ineffective-assistance-of-counsel claim fails.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Geedi's conviction and sentence, but **REMAND** with instructions to issue a schedule of payment for restitution. We also **DENY** his ineffective-assistance-of-counsel claim.