NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0306n.06

No. 12-4016

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 23, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GERMAN ROMAN-OLIVER,

     Defendant-Appellant.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    CLAY and DONALD, Circuit Judges; MAYS, District Judge.[*]

    **CLAY, Circuit Judge.**    Petitioner German Roman-Oliver, a prisoner serving a 192-month sentence for conspiracy to distribute at least 500 grams but less than 5 kilograms of cocaine, appeals the district court's calculation of his sentence. He asserts that the court erred in three respects: (1) improperly applying an obstruction of justice enhancement; (2) considering conduct for which he was acquitted by the jury; and (3) improperly considering as relevant to sentencing conduct that was not proved by a preponderance of the evidence. For the reasons that follow, we **AFFIRM** the district court's order.

---

    [*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

## BACKGROUND

### I. Factual Background

Petitioner was allegedly involved in a conspiracy, starting in the summer of 2007, to distribute large amounts of cocaine. The Drug Enforcement Agency ("DEA") conducted an investigation into this conspiracy. Through surveillance and witness statements, the DEA began to suspect that Petitioner was involved in two different conspiracies, one in the area around Columbus, Ohio, and the other in the areas around Dayton and Springfield, Ohio.

First, the DEA identified Tarico Smith as a suspect involved in distributing cocaine. While agents conducted surveillance of Smith, they first saw Petitioner at a residence known to be used by Smith for storing and distributing cocaine.

In March 2009, Petitioner paid cash for a plane ticket to the Dominican Republic. DEA task force officers approached Petitioner at the airport and asked for his consent to search his person and his luggage. During this search, agents discovered $34,929 in cash on his person and concealed in his bags.

Almost a year later, in January 2010, when DEA agents arrested Smith and executed a search warrant at his home, they discovered 688 grams of cocaine, more than $18,000, and a loaded .40 caliber Glock. In Smith's phone records, agents found a contact listing for "Mike," who had a New York area code. When asked about "Mike," Smith indicated that the individual was his cocaine supplier and identified Petitioner as that supplier.

During this time, DEA agents were concurrently investigating Jerdin Yanes as a suspected drug trafficker. Yanes was arrested in October 2009 in Columbus, Ohio. During his arrest, agents

searched Yanes' phone and discovered a number for "German," who also had a New York area code.

On February 25, 2011, after conducting surveillance and investigation of various individuals' telephone records, officers arrested Petitioner at his home. At the time, Petitioner had three cell phones in his possession—one was registered to him and the other two, which had New York area codes, were registered to other individuals. Petitioner consented to a search of his residence. Agents found $1,500 in cash, a car title in the name of Stephen Oscar Gonzalez, and two additional cell phones. They also discovered two loaded firearms at Petitioner's residence, both of which were registered in his name. The police did not discover drugs during this search.

Petitioner was indicted on a number of charges and proceeded to trial. A number of individuals, most of whom were Petitioner's co-conspirators, testified against him at trial. As Petitioner's brief indicates, most or all of these individuals received deals for providing statements and testifying at Petitioner's trial. Many of these witnesses indicated that their statements at trial were inconsistent with prior statements given outside of court.

### A. Etienne "Troy" Manning's Testimony

Manning testified that Petitioner was an acquaintance of his from the Columbus area. He explained that he purchased marijuana from Petitioner on a few occasions at his (Manning's) residence. According to Manning, Petitioner called him to ask whether he knew of anyone interested in purchasing cocaine. In response, Manning introduced Petitioner to his friends, Tarico Smith and Charles Antwon Hampton.

Manning explained at trial that following that introduction, Smith and Hampton began purchasing cocaine from Petitioner on a regular basis. Each of these transactions occurred at Manning's residence. According to Manning's version of the events, Smith purchased cocaine from Petitioner on six to eight occasions in quantities ranging from nine ounces to four kilograms. At a later date, Manning provided Petitioner's phone number to Smith, who began dealing directly with Petitioner.

### B. Smith's Testimony

Smith testified that he began selling drugs after being released from prison in March 2007 and a halfway house on parole later that year. Smith stated that he obtained cocaine from Petitioner at Manning's apartment on three or four occasions.

Once Smith purchased Petitioner's phone number from Manning, he began transacting directly with Petitioner at Smith's house on 13th Street. These transactions continued until Smith's 2010 arrest. Smith purchased cocaine from Petitioner two times per week during that time period, which he estimated amounted to about twenty separate transactions. According to Smith, he generally purchased between one and three kilograms of cocaine during these transactions. Smith testified that he distributed the drugs purchased from Petitioner to various customers, including Gregory Hamrick and Terrance Vance. He also claimed to have introduced Petitioner to Charles Hampton, who later purchased cocaine from Petitioner on four or five occasions.

Smith also stated that he received a delivery from Petitioner of over 500 grams of cocaine shortly before his arrest in January 2010. This cocaine was discovered by DEA officers when they executed a search warrant at Smith's residence.

Finally, Smith testified that he never smoked marijuana with Petitioner.

## C. Charles Hampton's Testimony

Hampton was arrested by DEA agents in April 2011 on drug charges. At that time, Hampton stated that he only knew Petitioner because he purchased marijuana from him. At trial, however, Hampton testified that he previously lied to officers and that he knew Petitioner from his presence at Manning's home during drug deals. In addition to his claims that he purchased cocaine from Manning, Hampton also claimed that Manning introduced him to Petitioner sometime around 2007 or 2008. After that introduction, Hampton met with Petitioner at Manning's home a number of times to obtain cocaine. On each of these occasions, Petitioner sold between two ounces and two kilograms of cocaine to Hampton. Sometime around 2008 or 2009, Hampton starting transacting with Petitioner through Smith, from whom he later obtained Petitioner's cell phone number. After obtaining this phone number, Hampton transacted directly with Petitioner once or twice a month until February 2011. On each of those occasions, Hampton purchased about one or two kilograms of cocaine.

## D. Testimony from Gregory Hamrick and Terrance Vance

Hamrick testified that he and Smith had been close friends since childhood and that he bought two to four ounces of cocaine from Smith at various times throughout 2008. According to his testimony, Hamrick once saw Petitioner "just for a quick second" when he delivered cocaine to

Smith.  Hamrick described the physical characteristics of the package delivered by Petitioner, but he was unable to describe in detail the quantity of drugs in the package.  Hamrick also described a second encounter with Petitioner in December 2009, when he witnessed Petitioner deliver a kilogram of cocaine to Smith.

Vance testified at trial that after he and Smith were released from prison, he bought cocaine from Smith.  During this time, he witnessed Petitioner delivering cocaine to two different locations⸺the 13th Street and Brooks Avenue locations.  According to Vance, each of these deliveries was in kilogram quantities.

**E.     Evidence of Springfield Area Conspiracy**

According to trial testimony, from 2007 to 2009, Wilson Antonio Beltre transacted in large quantities of cocaine.  One of Beltre's many suppliers was Petitioner, from whom he purchased 40 to 50 kilograms of cocaine between the beginning of 2007 and April 2009.  Approximately fifteen times over the course of their relationship, Petitioner accompanied Beltre when he met with customers in the Springfield area.

Two of Beltre's customers were Jeff Norton and Brian Pinson, who were drug-dealing partners in the Springfield area.  They regularly obtained kilogram quantities of cocaine from Beltre.  The two men once traveled to Columbus to obtain cocaine from Beltre, but it was not ready when they arrived.  While they waited outside, they witnessed Petitioner drive up to the home with two others.  Once these three individuals entered the home, the cocaine was ready and available.  During his testimony, Norton also stated that Petitioner previously helped him count money for a cocaine transaction between himself and Beltre.

**F.      Jerdin Yanes' Testimony**

Yanes testified that starting in mid-2007 or early 2008 and continuing through mid-2009, he sold cocaine to Petitioner.   He claims that Petitioner was one of his main customers during that time, purchasing between one and ten kilograms of cocaine from Yanes on a bi-weekly or even tri-weekly basis.   Yanes delivered cocaine to Petitioner in the garage of his residence. Yanes stopped supplying Petitioner with cocaine a few months before his own arrest in October 2009.

**G.      Petitioner's Testimony**

Petitioner acknowledged in his testimony that he knew Smith, Manning, and Hampton but insisted that he never sold cocaine to any of them.   He claimed that he only purchased marijuana and occasionally smoked marijuana with these individuals.   These statements by Petitioner were inconsistent with many of the witnesses' statements.   First, Smith, Manning, and Hampton each testified that they never smoked marijuana with Petitioner.   Second, they each testified that Petitioner had an ongoing cocaine sales relationship with Smith and Hampton.   Petitioner also testified that he knew Beltre as a landlord and social acquaintance, not as a cocaine supplier.

**H.      Additional Evidence Regarding the Drug Trafficking Conspiracy**

Evidence at trial indicated that Petitioner used multiple phones, many of which were in other people's names.   DEA agents who examined the telephone records of individuals involved in the conspiracies testified that there were extensive contacts between Petitioner's phones and the phones used by the other individuals involved in the two conspiracies.

**II. Procedural History**

Petitioner was charged with three criminal offenses and one count of criminal forfeiture. After a seven-day trial, during which numerous co-conspirators testified against Petitioner and he testified on his own behalf, the jury convicted Petitioner of conspiracy to distribute more than 500 grams and less than 5 kilograms of cocaine, a lesser included offense of the conspiracy charged in the Indictment. The jury found Petitioner not guilty of the other counts.

The probation office prepared a presentence investigation report ("PSR"), which recommended a base offense level of 38 based on testimony from one of his co-conspirators that he had delivered approximately 1,040 kilograms of cocaine to Petitioner over an extended period of time. *See* U.S.S.G. § 2D1.1(c)(1). The PSR also recommended two two-level enhancementsㅡone for maintaining a premises for distribution of a controlled substance and the other for obstruction of justice based on Petitioner's trial testimony that repeatedly denied involvement in the drug-trafficking conspiracies. A later addendum to the PSR also recommended that Petitioner receive a two-level firearm enhancement. Petitioner objected to the amount of cocaine that was attributed to him in the PSR as well as each of the enhancements.

Over these objections, the district court found by a preponderance of the evidence that Petitioner distributed at least 150 kilograms of cocaine and therefore adopted a base offense level of 38. Had the district court calculated the offense level based on a drug quantity of less than 5 kilogramsㅡthe offense for which he was convictedㅡhis total offense level would have been 30. That offense level, combined with Petitioner's criminal history category of I, would have resulted in a range of 121 to 151 months.

In addition to applying a higher total offense level, the district court imposed the obstruction of justice enhancement, and the court elected not to impose the other enhancements requested by the government. The district court found that Petitioner's denial of involvement in the conspiracy was inconsistent with the other witnesses' testimony and other evidence presented at trial, as well as the findings of the jury, and therefore constituted perjury and obstruction of justice.[1] The district court chose not to apply the firearm enhancement because drugs were not found in Petitioner's home when the two loaded firearms were discovered. Therefore, the district court imposed a total offense level of 40 and a criminal history category of I, which corresponds with a Guidelines range of 292 to 365 months. Due to Petitioner's lack of a criminal record, good work record, and the fact that he had minor children, the district court varied downward to 192 months of incarceration.

Petitioner timely appealed his sentence.

## DISCUSSION

### I.    Obstruction of Justice Enhancement

#### A.    Standard of Review

Petitioner and the United States disagree as to which standard of review should apply to this first issue presented. Petitioner concedes that the district court's factual findings are reviewed for clear error, however Petitioner also argues for *de novo* review to determine whether the facts as

---

[1]The district court stated that if "someone has taken the stand and lied . . . then the guideline [enhancement] should apply . . . and on key points what the defendant denied is exactly what the jury found, and I find no reason to want to second guess the jury with regard to Count 1. So I do think the enhancement is properly applied."

found by the district court amount to obstruction of justice. The United States, on the other hand, argues that plain error review should apply due to Petitioner's failure to object to the sentence earlier in the proceedings.

This Court reviews a sentence in a criminal case for procedural and substantive reasonableness. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). The proper standard of review for procedural reasonableness in such a case depends on whether the district court asked the parties "'whether they have any objections to the sentence . . . that have not previously been raised.'" *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (quoting *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004)). According to this Court's holding in *Bostic*, "[i]f a sentencing judge asks this question and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court.'" *Id*. (citing *Bostic*, 371 F.3d at 872–73); *see also United States v. Holman*, 314 F.3d 837, 846 (7th Cir. 2002) (applying plain error review where the defendant failed to raise objections to the manner in which his sentence was calculated).

For the *Bostic* rule to apply, however, the district court must use particular, clear language when asking whether counsel has objections to the sentence. *United States v. Novales*, 589 F.3d 310, 313 (6th Cir. 2009) (finding that the district court's phrasing of "So is there anything else on these?" was insufficient to meet the *Bostic* standard). *See also United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (finding that "Do you have anything further for the record, Mr. Canaday?" was not sufficiently clear); *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006) (finding that "Anything else, Ms. Goode?" was insufficient as well). Similarly, in *United States v. Freeman*,

this Court held that "Richard, do you want to renew your previously-raised objections for the record?" was insufficient because "the purpose of the *Bostic* question is to allow the parties to raise objections 'that have not previously been raised.'" 640 F.3d 180, 186 (6th Cir. 2011) (quoting *Bostic*, 371 F.3d at 872). However, this Court has found that "Now, are there any questions regarding the sentence that I have imposed?" is sufficient to meet the *Bostic* standard. *United States v. Wilson*, 232 F. App'x 540, 545 (6th Cir. 2007).

In the instant case, the district court concluded the sentencing hearing by asking the parties a few questions. First, the district court asked, "Are there any other sentencing issues that I have not addressed?" Attorneys for both parties responded by indicating that there was nothing remaining to be addressed. The district court went on to advise Petitioner of his right to appeal and asked whether Petitioner wished to appeal the sentence that was just imposed, to which he responded that he wished to appeal. Finally, the district court asked, "Are there any other issues that we need to discuss?" The United States reiterated its objection to the denial of a firearm enhancement, and Petitioner's counsel asked that the court recommend an intensive drug treatment program and prison placement near his family in central Ohio. With those responses, the sentencing hearing was concluded.

The questions posed by the district court were not sufficient to meet the *Bostic* standard. Asking whether there are any other unaddressed sentencing issues did not clearly indicate that the district court sought the parties' objections to the sentence, despite the fact that the United States responded with an objection. In *United States v. Geedi*, 490 F. App'x 755, 759 (6th Cir. 2012), this Court held that the judge's question "Are there any other sentencing issues that I have not

addressed?" was insufficient to satisfy the *Bostic* requirement. The Court applied an abuse of discretion standard of review, under which "a district court's legal interpretations are reviewed de novo, but its factual findings will not be set aside unless they are clearly erroneous." *Id.* The district court asked the same question in this case, failing to ask explicitly for counsel's objections or concerns regarding sentencing. As such, this Court applies a clear error standard of review to the district court's factual determinations related to the imposition of the obstruction of justice enhancement, and the district court's legal pronouncements on the issue are reviewed *de novo*. *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012) ("Although we apply a clearly-erroneous standard of review to the district court's findings of fact, the determination of whether specific facts actually constitute an obstruction of justice is a mixed question of fact and law that we review *de novo*.").

### B. Analysis

Pursuant to U.S.S.G. § 3C1.1, a sentencing court may impose a two-level obstruction of justice enhancement if a defendant "'willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice.'" *United States v. Dunnigan*, 507 U.S. 87, 92 (1993) (quoting U.S.S.G. § 3C1.1 (1989)). According to the commentary to this section, "'testifying untruthfully or suborning untruthful testimony concerning a material fact . . . during a preliminary or grand jury proceeding, trial, sentencing proceeding, or any other judicial proceeding'" may constitute an obstruction of justice. *Id.* at 93 (quoting U.S.S.G. § 3C1.1 cmt. n.1(c) (1989)).

To comply with Supreme Court precedent, a sentencing court must make and articulate specific findings before applying an obstruction of justice enhancement:

> It is not enough for a sentencing judge to recognize conflicting testimony and resolve in his own mind which witness is credible. To comply with the Supreme Court's directive in *Dunnigan*, the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious. The judge must, at least briefly, explain why the intentional perjury was material.

*United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir. 1995) (internal citations omitted). Therefore, a two-step procedure is required before a district court can find that a party has committed perjury and obstructed justice: "first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997) (internal quotation marks omitted). The second of these steps is required by U.S.S.G. § 3C1.1. The first step was created by this Court, which has "never insisted on rigid adherence to its terms." *Id*.

In making the required findings, a "district court may not rely solely on the jury's verdict, but must instead make an independent finding that the defendant committed perjury." *Id*. at 500. In *United States v. Medina*, 992 F.2d 573, 591 (6th Cir. 1993), the district "judge stated: 'I heard the testimony. And I have the jury's verdict. They were the fact finders. Based on their verdict, [the defendant] testified falsely. I can't say that the jury was wrong and substitute my judgment for theirs, that's not my role.'" This Court remanded *Medina* for resentencing after finding that the district court improperly deferred to the jury's verdict rather than making its own finding that the defendant committed perjury. *Id*. ("Such deference to the jury's fact-finding role is

inappropriate for sentencing purposes because the district court must itself make a finding that [the defendant] ha[s] obstructed justice."). Although mere deference to the jury verdict is improper, this Court has held proper a finding of perjury based on inconsistency between a defendant's statements and all of the testimony provided at trial, the ultimate jury verdict, and findings adopting the government's statements regarding perjury. *See United States v. Wilson*, No. 96-6709, 96-6710, 1999 WL 71499, at *6 (6th Cir. Jan. 14, 1999) (affirming application of the obstruction of justice enhancement after the district court stated that "Mr. Wilson's testimony to the contrary involved some form of a [sic] obstruction because he denied being involved and . . . [the conspiracy to deal drugs] was all around him and the testimony of others clearly refuted . . . his testimony, so I think [the enhancement is] entirely appropriate.").

Although this Court originally required a district court to "'identify specifically which statements or actions by a defendant constitute an obstruction of justice,'" this Court will uphold a district court's application of an obstruction of justice enhancement where the sentencing court either explicitly identifies the particular statements it believes are perjurious and how they are material to the case or where the context surrounding the court's generalized findings is sufficient to meet the *Dunnigan* requirements. *United States v. Zajac*, 62 F.3d 145, 148 (6th Cir. 1995) (quoting *United States v. Clark*, 982 F.2d 965, 970 (6th Cir. 1993)). In *United States v. Ledezma*, 26 F.3d 636 (6th Cir. 1994), for example, this Court upheld a district court's application of the obstruction of justice enhancement despite the court's failure to explicitly identify particular statements believed to be perjurious. The district court stated,

> I believe that the record in this case, following a verdict of guilty by
> the jury, requires that I find that the defendant perjured herself on

> material matters at the time that she testified in her defense. I do not find that any additional efforts required the government [sic], as a result of that perjury.
>
> I too tend to think that you would have put that whole case on regardless of whether she might or might not testify¢regardless of the way she did testify. But I do think it was perjury. I do think it was material, and I do think that under the law of the Sixth Circuit, I am required to assess an additional two points for obstruction of justice in light of those findings.

*Id*. at 644. This Court held that "the colloquy between the court and counsel *did* identify which statements the government claimed were untruthful . . . . [Therefore,] the record in this case reveals that the court had in mind the statements by Ledezma that had just been referenced by government counsel." *Id*. (emphasis added). The district court's findings were sufficient due to the context in which they were made.

Similarly, in *Clark*, this Court upheld the application of an obstruction of justice enhancement after the district court stated that "based on the totality of all of these circumstances, including statements made prior to the trial and during the trial, adding all of those factors together indicates . . . to the Court that the defendant did not tell the truth on one or more occasions for the purpose of impeding the administration of justice." 982 F.2d at 969. Although the district court did not identify specific instances of perjurious testimony, this Court found that "an examination of the colloquy between court and counsel at sentencing reveals that the district court accepted the government's argument, which did identify, with specificity, the statements by Clark the government claimed were untruthful." *Id*. at 970. In *United States v. Roper*, 135 F.3d 430, 434 (6th Cir. 1998), this Court again upheld the application of an obstruction of justice enhancement where the district court did not identify specific perjurious statements but the context of the court's

interactions with the government and its sentencing memorandum were sufficient to support the district court's finding that the petitioner lied. However, in *Sassanelli*, this Court reversed the district court's judgment and remanded for resentencing after the district court stated that "almost everything that Mr. Sassanelli said was contrary to what the Court believes were the facts in this particular matter, as articulated by the other witnesses . . . . [E]very other witness without exception said something contrary to that which was Mr. Sassanelli's position in this particular matter." 118 F.3d at 500. Without more specific information in the Pre-Sentence Report, the sentencing memoranda, or the district court's statements, this discussion of perjury was not sufficient to justify the enhancement. *Id*. at 500–02.

In the instant case, the United States alleges that the district court complied with each of these requirements and asserts that where "the defendant's testimony appears to be 'pervasively perjurious,' the district court is not obligated to recite the perjury line by line, so long as its findings encompass the factual predicates necessary for a finding of perjury." *Sassanelli*, 118 F.3d at 501 (quoting *United States v. Crowder*, No. 94-1576, 1995 WL 768990, at *8 (6th Cir. Dec. 28, 1995)). Without pointing to specific statements believed to be perjurious, the district court indicated that Petitioner's blanket denial of his involvement with the drug trafficking conspiracy constituted perjury. Although the PSR only identified one instance of alleged perjurious testimony, the United States' Sentencing Memorandum included a number of Petitioner's statements to support the enhancement. These statements included denials of cocaine distribution to Smith and others, denials of receipt of large sums of money from Smith and others, testimony regarding the purpose

for numerous telephones, statements regarding Yanes' social visits, and statements regarding Petitioner's relationships with Manning, Smith, and Hampton.

In response to the information before it, including this sentencing memorandum, the district court stated, "[H]ere I think the government's view is that the essence of the conviction is contrary to the essence of the defendant's testimony . . . . I am prepared to find that the two are not reconcilable, and on key points what the defendant denied is exactly what the jury found, and I find no reason to want to second guess what the jury found, and I find no reason to want to second guess the jury with regard to Count 1." Additionally, the court explained that "the core here is the denial of the drug trafficking, the testimony that was opposite that presented by the government and the jury's findings. I think with that record before me, that the objection [to the enhancement] is not well taken."

Although the district court fails to identify particular instances of perjurious testimony and the court appears to have based its application of the enhancement, in part, on the fact that Petitioner's testimony differed from the jury verdict and other witness statements, the context surrounding this decision satisfies the Sixth Circuit's gradually weakening case law on this issue.[2] The district court explained that the enhancement reflects Petitioner's blanket denial of

---

[2]While this Court initially required district courts to specify which portions of a defendant's testimony it believed were perjurious, the case law has gradually weakened and now allows district courts to specify much less. As a panel of this Court stated in *Clark* after accepting this weakening standard, "[T]he better practice, and the requirement that should be followed . . . is that, when assigning points for obstruction of justice, the district court should identify specifically which statements or actions by a defendant constitute an obstruction of justice." 982 F.2d at 970. We agree that this Court should return to the standard as articulated in our earlier case law. Requiring a district court to identify particular instances of perjury allows "the appellate court [to] properly perform its responsibility to review whether an enhancement . . . is proper." *Id.*

involvement in drug trafficking and the fact that Petitioner's testimony differed from each of the statements by the government's witnesses, as reflected in the PSR and sentencing memorandum. The context in which the district court made this reference meets the standard as laid out by this Court in *Clark*, *Wilson*, *Ledezma*, and *Drummond*, and is distinguishable from *Sassanelli*, in which the district court *and* the government failed to specify particular instances of perjury to support an obstruction of justice enhancement. *See Sassanelli*, 118 F.3d at 500. In the instant case, the government's sentencing memorandum and statements in the PSR provide sufficient context such that the district court's generalized findings of perjury meet this Court's requirements.

In addition to identifying which conflicting portions of a party's testimony constitute perjury, the district court must find that the false statements were willful and material. *See Dunnigan*, 507 U.S. at 94 ("A witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."). We require district courts to make these findings "to ensure that a defendant who is found guilty is not penalized by an enhancement under § 3C1.1 simply for having testified on his own behalf." *United States v. McRae*, 156 F.3d 708, 712–13 (6th Cir. 1998).

In this case, the district court met its burden with regard to willfulness and materiality. During the sentencing hearing, the district court stated that "if [it] is of the view that someone has taken the stand and lied about some essential fact in the case, then the guideline should apply." The district court recognized that the enhancement is not simply applied every time it appears that a defendant made a false statement on the stand: "There are, more than you think, times where

people can testify as defendants, have a verdict of guilty returned and not have the enhancement apply."   The court then proceeded to apply the enhancement based on a belief that Petitioner lied and the fact that the whole of Petitioner's testimony was contrary to the jury verdict and to the rest of the evidence presented at trial.   The district court concluded, therefore, that Petitioner willfully made these false statements and that they were material because they were pervasive and entirely inconsistent with the essence of the jury verdict and evidence against him.   *See Dunnigan*, 507 U.S. at 95–96 ("Given the numerous witnesses who contradicted respondent regarding so many facts on which she could not have been mistaken, there is ample support for the District Court's finding [that the defendant obstructed justice].").

Based on the foregoing, the district court's application of the obstruction of justice enhancement and the resulting sentence were not procedurally unreasonable.[3]

## II.    Consideration of Acquitted Conduct

Petitioner asserts that the district court erred in considering conduct for which he was acquitted when calculating the applicable Guidelines range.   Had the district court only considered the conduct for which he was convicted (conspiracy to distribute between 500 grams and 5 kilograms of cocaine), his Guidelines range would have been 121 to 151 months.   Instead,

---

[3]The United States asserts that even if this Court were to find that the obstruction of justice enhancement was improperly applied, this Court can affirm the district court's sentence by applying a two-level firearm enhancement in accordance with U.S.S.G. § 2D1.1(b)(1).   The United States poses this enhancement as an alternative method for affirming the district court's sentence, rather than asserting a cross-appeal.   Because this Court affirms the district court's application of an obstruction of justice enhancement, this Court need not decide whether the district court erred by denying the firearm enhancement.

by considering conduct for which he was acquitted (conspiracy to distribute more than 5 kilograms of cocaine), the district court calculated a Guidelines range of 292 to 365 months.

Petitioner alleges that the Sentencing Reform Act does not authorize sentencing courts to use acquitted conduct when making Guidelines range determinations. However, this Court's *en banc* opinion in *United States v. White* clearly decided this issue: "[T]he Sixth Amendment [does not] prevent[] a district court from relying on acquitted conduct in applying an *advisory* guidelines system." 551 F.3d 381, 384 (6th Cir. 2008) (en banc). Therefore, Petitioner's argument is meritless.

Petitioner asserts an additional argument in his reply brief to demonstrate that the district court erroneously considered conduct for which he was acquitted. Petitioner argues that the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), prohibits the district court's use of conduct that was not proved beyond a reasonable doubt before a jury. In *Alleyne*, the Court held that "any fact that increases the mandatory minimum is an 'element' [of the crime] that must be submitted to the jury [and found beyond a reasonable doubt]." *Id*. at 2155. Unfortunately for Petitioner, *Alleyne* does not apply to this case. The district court did not apply a mandatory minimum when it determined Petitioner's sentence. In fact, no mandatory minimum was ever at issue in this case. Instead, the district court determined a Guidelines range, which is not mandatory, and then used its discretion to vary downward. *Alleyne* does not stand for the proposition that any conduct used to determine a sentence must be proved beyond a reasonable

doubt.[4]   Therefore, the district court did not err in considering conduct for which Petitioner was acquitted by the jury.

## III.   Conduct Proved by a Preponderance of the Evidence

Petitioner asserts that even if *Alleyne* doesn't apply to his case, the district court still erred by considering conduct that was not proved by a preponderance of the evidence.   *See White*, 551 F.3d at 385.

### A.   Standard of Review

As stated above, the district court's factual findings are reviewed for clear error.   *United States v. Thomas*, 49 F.3d 253, 259 (6th Cir. 1995) ("A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should not be rejected unless clearly erroneous.").   "A factual finding is clearly erroneous where, although there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### B.   Analysis

Although a jury's conviction must be based on evidence proved beyond a reasonable doubt, the prosecution bears a lesser burden at the sentencing stage.   The prosecution need only prove the amount of drugs for sentencing purposes by a preponderance of the evidence.   *United States v.*

---

[4]In fact, the Court stated in its opinion that "[o]ur ruling today does not mean that any fact that influences judicial discretion must be found by a jury.   We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne*, 133 S. Ct. at 2163.

*Russell*, 595 F.3d 633, 646 (6th Cir. 2010). Where the exact quantity of drugs is unclear, the sentencing court may estimate that quantity based on "competent evidence in the record. In other words, the court finding must have 'some minimum indicium of reliability beyond mere allegation.'" *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995) (internal citation omitted) (quoting *United States v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989)). A court may find that "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). However, where the drug quantity is unknown, "the district court is encouraged to 'err on the side of caution' and only hold the defendant responsible for that quantity of drugs for which 'the defendant is more likely than not *actually* responsible.'" *United States v. Baro*, 15 F.3d 563, 569 (6th Cir. 1994) (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)). In *Baro*, after the district court failed to make factual findings to support a drug quantity increase, this Court remanded the case for resentencing, explaining that "[g]iven the marked impact of this single kilogram increase on the defendants' sentences, the district court should explicitly set forth the evidence on which it relies if it finds [the defendants] accountable for distribution of at least fifty kilograms of cocaine." *Id*. Therefore, where a district court sentences a defendant based on acquitted conduct, the court must identify the evidence on which it relied to make the drug quantity calculation. *Id*.; *see also United States v. Walker*, 399 F. App'x 75, 82–83 (6th Cir. 2010).

In the instant case, the district court based its drug quantity calculation on a number of factors, including the testimony of many of Petitioner's co-conspirators. The district court

acknowledged that the testimony of these co-conspirators alone "would not satisfy proof by a preponderance of the evidence" because the credibility of the co-conspirators was successfully challenged on cross-examination. However, the court also cited to phone records and surveillance, finding that "the corroboration that the government also presented, particularly with regard to the phone records and the surveillance" convinced the court "that there [was] a showing by a preponderance of the evidence that the other acquitted conduct should be used in computing the sentencing guideline range." Considered together, the trial testimony, phone records, and surveillance were sufficient to prove by a preponderance of the evidence that Petitioner was accountable for more than 150 kilograms of cocaine. Because "the district court interpret[ed] the evidence in a manner consistent with the record, we are required to uphold its decision even if we would have reached the opposite conclusion." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentence.